**Kristen West McCall,** OSB No. 061380
kristen@pdm.legal
**Deena D. Sajitharan,** OSB No. 192147
deena@pdm.legal
**PICKETT DUMMIGAN MCCALL LLP**
Centennial Block, Fourth Floor
210 S.W. Morrison Street
Portland, OR 97204
Telephone: (503) 223-7770
Facsimile: (503) 227-2530

*of Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **JACQUELINE MARIE ORR,** | Case No. 3:20-CV-02201-AC |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | **Violation of Civil Rights – Eighth Amendment – Deliberate Indifference to Serious Risk of Harm – Attorney Fees** |
| **PETE BRUNS, BOB ADAMS, MARSHA MCCORKHILL, JESS ORTIZ, STEVEN KING, E. BECKER, ESSEX HOUSTON, STEVEN HONG, AMANDA RASMUSSEN, MICHAEL BUXMAN, LAURA ONSTOTT, JUSTIN WYLIE, NICK HAZEPIS, DEREK MCCORKHILL, KENNY POHLSCHNEIDER, DEMARQUIS DONALD, JAMES TAYLOR, CURTIS GIBSON, COLLEEN MILLER, RAMIRO YANEZ, and FORREST LYONS** | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff alleges:

## NATURE AND PURPOSE OF THE ACTION

This is a civil rights action, brought under 42 U.S.C. § 1983 for violation of the Eighth Amendment, for the harm and injury to Plaintiff Jacqueline Marie Orr ("Plaintiff") caused by Defendants, Pete Bruns, Bob Adams, Marsha McCorkhill, Jess Ortiz, Steven King, E. Becker,

Essex Houston, Steven Hong, Amanda Rasmussen, Michael Buxman, Laura Onstott, Justin Wylie, Nick Hazepis, Derek McCorkhill, Kenny Pohlschneider, Demarquis Donald, James Taylor, Curtis Gibson, Colleen Miller, Ramiro Yanez, and Forrest Lyons (collectively, "Defendants") acted with deliberate indifference to a serious risk of harm to Plaintiff when they required her to regularly climb in and out of the back of a box truck being used to transport inmates that was known to be unsafe. Inmates regularly used the slick metal bumper to get in and out of the box truck because there were no steps, no anti-slip traction, no handrails, no grab bars, and no hand holds for safely entering and exiting the box truck. While exiting the box truck on a rainy day, Plaintiff's foot slipped on the bumper and she fell face first, hitting her head, causing a traumatic brain injury. Defendants did not add steps, grab bars or anti-traction material to the back of the box truck until several months after at least three inmates – one before and one after Plaintiff – had slipped on the bumper and were injured.

## JURISDICTION AND VENUE

1. This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).
2. Venue is proper within the District of Oregon because all of the events giving rise to this claim occurred in this judicial district, and all defendants reside in this judicial district. 28 U.S.C. § 1391(b).

## PARTIES

3. Plaintiff lives in the state of Oregon. During all material times, she was an inmate at the Oregon Department of Corrections ("ODOC") and was lodged at the Coffee Creek Correctional Facility ("COFFEE CREEK") in the city of Wilsonville, state of Oregon. Plaintiff was released on September 26, 2019.
4. Forrest Lyons was the assistant superintendent of general services, overseeing the operations of the physical plant which supplied the box truck at issue for use by Captains, Lieutenants, Sergeants, Corporals and Officers in charge of security at Coffee Creek and he was directly

consulted on the continued use of the box truck in December 2018. He is sued in his individual capacity. At all relevant times he was acting within the course and scope of his employment relationship with the ODOC and under color of state law.

5. Pete Bruns was manager of the physical plant and in charge of maintenance and assignment of vehicles at Coffee Creek, including the box truck at issue. He is sued in his individual capacity. At all relevant times he was acting within the course and scope of his employment relationship with the ODOC and under color of state law.

6. Marsha McCorkhill was a Captain overseeing operations at the minimum security facility at Coffee Creek between January 2013 and December 2016 where she oversaw transportation of inmate work crews; and between January 2017 and December 20, 2018, she was the Captain in charge of assignments. In December 2018, she was consulted regarding continued use of the box truck. She is sued in her individual capacity. At all relevant times she was acting within the course and scope of her employment relationship with the ODOC and under color of state law.

7. Bob Adams was the Safety Administrator for the Department of Corrections, in charge of safety compliance within ODOC facilities including Coffee Creek. He is sued in his individual capacity. At all relevant times he was acting within the course and scope of his employment relationship with the ODOC and under color of state law.

8. Jess Ortiz was a security officer holding the position of "security patrol" and driving the box truck at the time Plaintiff fell, and for months before Plaintiff fell. He is sued in his individual capacity. At all relevant times he was acting within the course and scope of his employment relationship with the ODOC and under color of state law.

9. Steven King, E. Becker, Steven Hong, Amanda Rasmussen, Michael Buxman, Laura Onstott, Justin Wylie, Nick Hazepis, Derek McCorkhill, Kenny Pohlschneider, Demarquis Donald, James Taylor, Curtis Gibson, Colleen Miller, Ramiro Yanez were lieutenants on duty in charge of operations in the minimum security facility including transportation of inmate work crews using the box truck at issue. They are sued in their individual capacities. At all relevant

times they were acting within the course and scope of their employment relationship with the ODOC and under color of state law.

10. Essex Houston was a sergeant assigned to work at the inmate processing desk at Coffee Creek where he processed inmates, including Plaintiff, to be loaded onto to the box truck at issue. He is sued in his individual capacity. At all relevant times he was acting within the course and scope of his employment relationship with the ODOC and under color of state law.

**FACTS**

11. While incarcerated at Coffee Creek, Plaintiff was assigned to work on an ecology project called "The Viola Project". Defendants required her to ride as a passenger in the back of a box truck that was typically designed to move cargo or furniture, with as many as twenty (20) other inmates at a time. Defendants required this method of transportation for inmates to move them between their area of lodging to the assigned work area. The average ride in the truck was approximately fifteen (15) minutes. Inmates were required to ride as passengers in the enclosed bed of the box truck without windows, seats, or seatbelts. The rear door of the box truck was non-operational and was left in the open position during transport.

12. To enter and exit the box truck, Plaintiff was required to climb into and out of the bed of the box truck where she and other inmates would sit on the floor. The distance was large, approximately three (3) feet between the ground and the bed of the box truck, inmates would use the metal bumper as a step to support them in stepping into or out of the bed of the box truck. The bumper was significantly higher than an average step and not designed to be used as a step. The bumper was a slick metal material without any anti-slip or anti-skid material applied to the surface of the bumper and was slippery especially when wet.

13. The box truck was licensed for highway and road use.

14. The method of transportation being used for inmate workers did not meet any reasonable minimum standards for the transportation of human beings, including minimum standards set by Oregon Occupational Safety and Health Administration (OSHA) for the transportation of workers in Division 2, Title 3, Oregon Administrative Rule 437-002-2225(2)(b). As required

by this OSHA rule, the entrance and exit to the box truck did not have steps, ladders, or railings to allow safe access to enter and exit from the bed of the box truck, the location where inmates must access to ride as passengers. As such, there were no slip-resistant steps or rungs available for use by the inmate passengers which is required by the rule.

15. Also, the method of transportation did not meet the minimum standards set by Federal Department of Transportation (49 CFR 398.5) for "parts and accessories necessary for safe operation," of vehicles used to transport workers, and specifically section (f) which addresses minimum requirements for the passenger compartment of vehicles, other than buses, used to transport workers. The rules in 49 CFR 398.5 are adopted by the Secretary of State for the safe use in transporting migrant workers (29 CFR 500.105(2)(vi)(H)) and have been adopted by the Oregon Department of Transportation (OAR 740-100-0010(1)).

16. The box truck being used to transport inmate workers as passengers did not meet regulations for the safe transportation of workers at 49 CFR 398.5(f)(8) which requires ladders and steps be used in the passenger compartment for ingress or egress when necessary, and when necessary, requires maximum vertical spacing between of footholds shall not exceed twelve (12) inches, and the lowest step may not be more than eighteen (18) inches above the ground when the vehicle is empty. The box truck at issue had vertical spacing between the bed and the ground larger than twelve (12) inches; and lowest step more than eighteen (18) inches above the ground.

17. The box truck being used to transport inmate workers as passengers did not meet regulations for the safe transportation of workers at 49 CFR 398.5(f)(9) which requires there to be hand holds or devices for similar purpose to permit ingress and egress without hazard to passengers. The box truck had no hand holds or similar device within reach for passengers entering and exiting passenger compartment to permit passengers to ingress and egress without hazard.

18. Plaintiff is shorter than an average female in height. She measures five (5) feet and one (1) inch in height and has a correspondingly short inseam of twenty-seven (27) inches.

19. Inmates would regularly provide physical assistance to help each other get in and out of the back of the truck given the relatively large distance – about three (3) feet – from the truck bed to the ground. Entering and exiting, they would grab each other's arms for support in stabilizing fashion, to attempt to prevent each other from being injured by falling. When exiting the box truck, they would spot each other by putting their arms out, to try and brace for a potential fall.

20. Prison staff did not provide any assistance to inmates entering or exiting the box truck.

21. In November 2017, Marilyn Calhoun, an inmate incarcerated at the same time as Plaintiff, fell from the back of the same box truck while attempting to exit. The box truck was in the same condition described above at the time of her fall. She suffered serious injuries to her shoulder and upper back.

22. After Ms. Calhoun fell and was injured, Defendants continued to require inmate workers to ride in the box truck as passengers, without modifications, which Defendants knew to be unsafe. In addition to the OSHA rules stated above, continuing to use a vehicle that is known to be unsafe does not meet minimum standards set by the Oregon Occupational Safety and Health Administration at Oregon Administrative Rule 437-002-2224, which prohibits the use of unsafe vehicle known to be unsafe until it is repaired.

23. On December 20, 2018, Plaintiff was exiting the back of the box truck and attempted to use the bumper as a step down. It was raining and the bumper was wet. As she stepped down, her foot slipped from the slick bumper and she fell face forward, her head hitting on the ground. Blood immediately poured from a laceration on her head. She was transported to the Legacy Meridian Park Hospital's emergency department for urgent medical care.

24. About a week after Plaintiff fell and was seriously injured, another inmate, Amy Tamara Young, fell while entering the box truck when her foot slipped off the bumper which she was attempting to use to crawl into the box truck. She suffered injuries to her back when she fell.

25. After three inmates fell, as described in paragraph 11 above, and several months later, Defendants modified the box truck. They added an anti-slip step on the back of the box truck

and anti-slip traction to the bumper, as well as two grab bars, one on each side, to aid inmate workers in safely entering and exiting the back of the box truck.

26. As a result of Plaintiff falling out of the box truck and hitting her head, she suffered dizziness, nausea, motion sickness, vertigo, confusion, balance impairment and head pain, and reported these symptoms to Coffee Creek staff.
27. On January 1, 2019, after noticing her ongoing altered mental status and impaired balance, Coffee Creek staff sent her back to the Legacy Meridian Park Hospital's emergency department, where the emergency room doctor diagnosed her with post-concussion syndrome and recommended a follow up with neurology and physical therapy.
28. On January 3, 2019, Coffee Creek medical staff ordered a "Brain MRI," three sessions of physical therapy, and noted "no neurology approved."
29. On February 28, 2019, Plaintiff attended one physical therapy appointment, where the therapist told her she needed to see a neurologist before continuing with physical therapy. Plaintiff was not allowed any follow up consultation with a neurologist and was not permitted to attend any further physical therapy appointments.
30. Progress notes throughout Plaintiff's continued incarceration record her diagnoses of traumatic brain injury and concussion, and report persistent symptoms of altered neurological function, light sensitivity, noise sensitivity, impaired balance, headaches, burning eye pain, dizziness, vertigo, sadness, unsteady gate, pressured and unorganized speech, and difficulty finding words.
31. Plaintiff was scheduled to be discharged August 1, 2019. Due to an inability to secure housing to accommodate Plaintiff's disability, which included the need for a restroom in compliance with the American with Disabilities Act, with grab bars near the toilet and shower, Plaintiff's discharge was delayed.
32. Plaintiff was discharged September 26, 2019.
33. Due to the injuries suffered in the fall, Plaintiff became disabled, and is unable to work or take care of herself without constant and regular assistance and supervision for safety.

Plaintiff applied for and is receiving social security disability benefits because she is unable to participate in gainful employment due to the traumatic brain injury she suffered in this fall.

**CLAIM FOR RELIEF**

**Violation of Eight Amendment**

**Deliberate Indifference to Serious Risk of Harm**

34. Defendants authorized, ordered and by all means required Plaintiff to use a dangerous method of transportation, requiring Plaintiff to enter and exit the back of a box truck knowing there existed a significant risk of falling from the height of approximately three (3) feet from the bed of the box truck to the ground, because at least one person had fallen off the back of the box truck and was injured prior to Plaintiff falling, and the exit from the box truck had no steps, no handrails, no grab bars, and no anti-slip or anti-skid material on the rear bumper, which was slick and not designed to be a step but was being regularly used as such by prison workers. Defendants were deliberately indifferent to a serious risk of harm to Plaintiff thereby subjecting her to cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

35. As a direct result of Defendants' violation of Plaintiff's civil rights, Plaintiff suffered a Traumatic Brain Injury ("TBI"), Major Neurocognitive Disorder and Depressive Disorder secondary to TBI, including chronic cognitive impairment and need for ongoing treatment including doctors' visits, physical, occupational, speech and cognitive therapy and rehabilitation. In addition, Plaintiff has suffered a loss of past wages and a loss of earning capacity. Accordingly, Plaintiff is entitled to economic and non-economic damages against defendants in an amount to be determined at trial for the violations of the Eighth Amendment and for Plaintiff's attorney fees and costs pursuant to 42 U.S.C. § 1988.

36. As a direct result of Defendants' violation of Plaintiff's civil rights, Plaintiff suffered economic and non-economic damages.

///

///

**REQUEST FOR RELIEF**

WHEREFORE, the Plaintiff requests relief as follows:

a. For economic and non-economic damages resulting from the deliberate indifference to a serious risk of harm;

b. An award of costs and attorney's fees under 42 U.S.C. § 1988; and

c. Such other relief as the Court deems just and equitable.

DATED this day 21st of December 2021.

*/s/ Kristen McCall*
Kristen McCall, OSB No. 061380
Deena D. Sajitharan, OSB No. 192147

PICKETT DUMMIGAN MCCALL LLP

*Of Attorneys for Plaintiff*